# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

JARED D. SCHNELL,                    )
                                     )
    Plaintiff,                   )
                                     )
v.                                   )    Case No. CIV-12-1103-D
                                     )
CAROLYN W. COLVIN,[1]                )
Commissioner of Social               )
Security Administration,             )
Administration,                      )
                                     )
    Defendant.                   )

## REPORT AND RECOMMENDATION

Jared D. Schnell (Plaintiff) brought this action pursuant to under 42 U.S.C. § 405(g) seeking judicial review of Defendant Acting Commissioner's (Commissioner) final decision denying Plaintiff's application for disability insurance benefits under the Social Security Act. United States District Court Judge Timothy D. DeGiusti referred the matter for proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (b)(3), and it is now before the undersigned Magistrate Judge. Upon review of the pleadings, the administrative record (AR), and the parties' briefs, the undersigned recommends the Commissioner's decision be affirmed.

---

[1]    Effective February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as Defendant in this action.

# I.  Administrative proceedings.

To support his October 2009 application seeking disability insurance benefits, Plaintiff alleged disability since June 26, 2009, claiming he suffered from "[l]eft shoulder injury rotator cuff torn, inflammation of the chest cavity, acid reflux, sleeping problems."  AR 145.  During an administrative review hearing, an Administrative Law Judge (ALJ) heard testimony from Plaintiff and a vocational expert.  *Id.* at 30-51.  Plaintiff's attorney also made a statement of significance to the issues presented on judicial review:

> [P]laintiff comes within a hair of meeting the listing . . . .  In order to meet the listing, he would have to have a body mass index of 17.5. I didn't realize until today that he was still down to even more since his surgery, *so he won't meet the listing, but it would be my contention that it would be the equivalent of the listing in that it has had the same effect on his ability to function.*

*Id.* at 35 (emphasis added).

The ALJ subsequently determined Plaintiff was severely impaired by "status post rotator cuff tear/surgical repair[2] and pancreas divisum[3] with abnormal weight loss."  *Id.* at 18.  Though he found Plaintiff could not perform his past relevant work because of functional limitations resulting from these

---

[2]    Plaintiff does not claim the ALJ committed any error relating to the severe shoulder impairment.

[3]    "Pancreas divisum" is "a developmental anomaly in which the pancreas is divided into two separate structures, each with its own duct."  Dorland's Illustrated Medical Dictionary 1387 (31st ed. 2007).

impairments, the ALJ concluded Plaintiff could perform other substantial gainful activity, and, as a result, was not disabled. *Id.* at 18, 24, 25. The Appeals Council of the Social Security Administration denied Plaintiff's request for review, *id.* at 1-5, and Plaintiff ultimately sought review of the Commissioner's final decision in this Court. Doc. 1.

## II.    Determination of disability.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing five steps). Under this sequential procedure, Plaintiff bears the initial burden of proving he has one or more severe impairments. *See* 20 C.F.R. § 404.1512; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). Then, if Plaintiff shows he can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *See Turner*, 754 F.2d at 328; *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984).

## III.  Analysis.

### A.  Standard of review.

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).  "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988).

### B.  Plaintiff's claims of error.

Plaintiff brings four claims of error: (1) the ALJ committed legal error at the third step of the sequential process by failing to explain why Plaintiff's severe impairment pancreas divisum with abnormal weight loss impairment – hereinafter, digestive disorder – did not equal Listing 5.08; (2) the ALJ erred by failing to find that Plaintiff's digestive disorder equals Listing 5.08; (3) the ALJ committed legal error by failing to fully develop the record through the use of a medical expert or a post-hearing consultative examination on the issue of medical equivalency; and (4) the Appeals Council violated the treating-physician

4

rule by rejecting a medical source statement from Plaintiff's treating-physician and by failing to provide a rationale for rejecting the physician's opinions. Doc. 11, at 2-12.

### 1. The ALJ committed legal error at step three.

The ALJ found at the third step of the sequential process that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. [§§] 404.1520(d), 404.1525 and 404.1526)."[4] AR 18. The ALJ explained he had compared Plaintiff's "signs, symptoms, and laboratory findings with the criteria specified in all of the Listings of Impairments" but had found "no evidence that [Plaintiff] has an impairment, or combination of impairments, that meets or equals any listed impairment." *Id.*

In *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996), the Tenth Circuit held an ALJ's similar "bare conclusion" that a claimant's impairments failed to meet or equal any listed impairment was "beyond meaningful judicial review" and ordered a remand in order "for the ALJ to set out his specific

---

[4]     "The Listing of Impairments describes, for each of the major body systems, impairments that are considered severe enough to prevent an adult from doing any gainful activity." 20 C.F.R. § 404.1525(a).

findings and his reasons for accepting or rejecting evidence at step three." Thus, relying on *Clifton,* Plaintiff correctly maintains the ALJ committed legal error.

The Tenth Circuit, however, later clarified that *Clifton* did not "reject the application of harmless error analysis." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). The court explained that even where, as here, the ALJ failed to make specific step-three findings, a court could still affirm the ALJ's decision when the ALJ's confirmed or unchallenged findings made elsewhere in the decision [i.e., at steps four and five] "conclusively preclude Claimant's qualification under the listings at step three" such that "[n]o reasonable factfinder could conclude otherwise." *Id.* at 735.

Thus, the ALJ's step-three error in this case no longer mandates automatic reversal. The undersigned considers whether that error is harmless in light of the ALJ's other findings in conjunction with Plaintiff's claim that the ALJ erred in failing to find Plaintiff's condition equals Listing 5.08.

2.    **No reasonable factfinder, upon consideration of the indisputable medical evidence that the criteria of Listing 5.08 were not satisfied and of the ALJ's confirmed and unchallenged findings, could conclude that Plaintiff's impairment equals Listing 5.08.**

a.    **Listing 5.08.**

Listing 5.08's criteria are met when a claimant experiences "[w]eight loss due to any digestive disorder despite continuing treatment as prescribed, with

6

BMI (Body Mass Index) of less than 17.50 calculated on at least two evaluations at least 60 days apart within a consecutive 6-month period." 20 C.F.R. § 404, Subpt. P, App. 1, Listing 5.08 (emphasis omitted). The formula for calculating a person's BMI is: BMI = Weight in pounds / (Height in Inches x Height in Inches) x 703. *See id.* § 5.00(G)(2)(b).

### b. The ALJ's findings.

Because the ALJ's evaluation of the evidence and his specific findings elsewhere in the decision "may provide a proper basis for upholding a step three conclusion that [Plaintiff's digestive disorder] impairment[] do[es] not . . . equal any listed impairment," *Fischer-Ross*, 431 F.3d at 733, the relevant portions of the ALJ's step-four assessment[5] are set out in full.

> The claimant is 5 feet 11 inches tall and weighs 127 pounds . . . .
>
> He further testified he . . . stopped working due to an injury to his shoulder and digestive problems. He has surgery in February 2011 for his pancreas. He has lost from 172 to 127 pounds. His gall bladder was removed last year, and he has been having pancreatitis attacks, which are getting worse. His daily activities include vacuuming, light dusting, and taking out the trash. He spends most of the day in his recliner with the heating pad on the middle of his back. When he awakens in the morning, he is nauseous and does not feel like eating. He wakes up at night due to pain. His

---

[5] The ALJ concluded Plaintiff had the Residual Functional Capacity to perform "a full range of light work . . . this includes lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk (with normal breaks) for 6 hours in an 8-hour workday . . . ." AR at 18-19.

pain medication makes him groggy and cause nausea. The claimant is able to drive to the grocery store in Ponca City and to his doctor's office in Oklahoma City. His wife goes with him. He has problems with anxiety. He is able to walk 30 to 45 minutes, stand 30 minutes, and lift 24 pounds. The claimant reported he has pain all day in his back and pancreas.

\* \* \* \*

Gordon Laird, D.O. saw the claimant on referral for evaluation of recurrent pain in the upper abdomen and chest on February 15, 2010. It had been previously diagnosed as costochondritis in the emergency room. The claimant reported he has to sleep in a recliner, because if he lies down he has significant reflux and discomfort. Spicy foods do appear to increase his discomfort. He reported some weight loss. Examination of the claimant's abdomen demonstrated some pain in the midepigastric and upper right quadrant area. There was also pain and spasm palpable at the inferior aspect of the right scapula. Dr. Laird recommended an ultrasound of the gallbladder and an EGD. The ultrasound revealed gallbladder polyps. Stomach biopsy on February 22, 2010, showed reactive changes suggestive of chemical type injury, such as with NSAIDs, alcohol, and bile reflux. On March 1, 2010, the claimant underwent laparoscopic cholecystitis (Exhibit 18F).

On May 3, 2010, the claimant saw Amy Holmes, M.D. to establish patient care. The claimant reported he has type 2 diabetes and complaints of chest pain in the past. However, a full cardio work up came back normal. His diabetes was controlled with diet and herbal medications, but he was losing weight. The claimant was not taking medication for his reflux. Upon examination, the claimant was 5 feet 11 inches tall and weighed 138 pounds 10 ounces. His abdomen was soft and non-tender. He did have chest wall tenderness to palpation in the mid chest and tenderness when his ribs were compressed. Chest x-rays were normal. When the claimant returned on May 12, 2010, he continued to have chest pain radiating to his back. He reported that sometimes it was hard for him to catch his breath. He had worsening pain when lying flat as well as burning and burping up acid. The claimant added he had

been diagnosed with gastritis after his EGD.  Metoclopramide 10 mg 3 times a day was started (Exhibit 19F).

* * * *

On July 14, 2010, Dr. Holmes saw the claimant for complaints of weight loss and digestion issues.  He started taking hydrochloric acid for his stomach and saw a nutritionist.  The claimant reported he had been taking in as much as 80 to 90 grams of fat each day. He continued to lose weight and had lost about 40 pounds in the past year.  He continued to have substernal pain that radiated to his back and up to the neck.  The claimant reported the pain was worse with eating and drinking.  He was not having diarrhea, no fever, and has been more, fatigued.  The claimant is taking a probiotic. His thyroid was checked several months ago and was reportedly normal.

Upon examination, the claimant weighed 130 pounds 2 ounces. Skin, hair, and nails showed no evidence of abnormality.  His lungs were clear.  His heart had normal sinus rhythm.  His abnormal appeared normal in shape.  The claimant was alert and oriented to time, place, and person.  His mood, judgment, and affect were all appropriate.  He was diagnosed with abnormal loss of weight. When the claimant returned on September 2, 2010, he presented with complaints of fatigue, brain fog, weight loss, and low libido. His skin was pale yellow and dark under his eyes.  The claimant was concerned he may have a malabsorption issue.  He was depressed because of the way he felt. Upon examination, the claimant weighed 128 pounds with a BMI of 17.85.  His abdomen was soft, non-tender without rebound or guarding.  Normal bowel sounds were heard without rush.  No palpable masses or hepatosplenomegaly was appreciated.  No visible scars or hernias were seen.  It was advised the claimant had a CT of the abdomen, but diagnostics were limited due to uninsured/ finances. GI consult was recommended.

On September 20, 2010, the claimant reported the right upper quadrant pain was worse, and he was more yellow.  After eating, he got epigastric pain radiating to his back and intermittent nausea.

The claimant stated, "I feel like I'm dying." The claimant weighed 126 pound 8 ounces. His abdomen appeared normal in shape with normal umbilicus and normal skin, no visible scars, sinuses, enlarged veins or visible peristalsis or divarication of recti noted. On palpation, there was localized tenderness at epigarium and suprapubic region with no guarding or rigidity. The claimant was diagnosed with abnormal loss of weight and abdominal pain generalized. CT of the abdomen dated September 22, 2010, revealed the pancreas was enlarged, but no focal lesions were seen, no ascites or cysts, and the duct was not dilated. When the claimant returned on December 6, 2010, the claimant reported he had an endoscopic ultrasound of the pancreas scheduled. He stated that his depression was better, and he had not been checking his blood glucose. The claimant had gained up to 133 pounds (Exhibit 21F).

CT scan of the abdomen and pelvis on January 17, 2011, revealed pancreas divisum, with an otherwise normal pancreas. On February 16, 2011, the claimant underwent ERCP with sphincterotomy and stent placement for pancreas divisum (Exhibit 22F).

AR 19-23.[6]

c.     **The parties' contentions.**

(i)     **Plaintiff's opening brief.**

To support his claim that the ALJ erred by failing to find that his digestive disorder medically equals Listing 5.08, Plaintiff provides a detailed summary of his medical history and evaluations from September 9, 2009 through July 15, 2011. Doc. 11, at 5-8. He shows that during the relevant time-frame, his weight

---

[6]     Unless otherwise indicated, quotations in this report are reproduced verbatim.

dropped from 164 pounds (BMI 22.9%) to 127 pounds (BMI 17.7%). *Id.* at 5-7.

Plaintiff further notes that after the hearing, his weight dropped below Listing

5.08's level when measured at three evaluations, although no two of these

evaluations were at least sixty days apart. *Id.* at 8. Plaintiff's summary of the

evidence is consistent with that of the ALJ's, and he does not claim to include

any evidence – objective or otherwise – that was overlooked or mischaracterized

by the ALJ. *Id.* at 5-8.

Plaintiff cannot – and does not – contend the criteria of Listing 5.08 have

been met. Instead, he claims (1) his BMIs "covering the requisite time span

hovered only slightly above [listing level]" and his pain and other symptoms are

"[j]ust as important[]," *id.* at 7, and (2) his "steady and substantial weight loss

due to pancreas divisum should be considered medically equivalent to Listing

5.08 . . . ." *Id.* at 8. According to Plaintiff, "[t]he ALJ's failure to make such a

finding is error." *Id.* Nonetheless, apart from quoting a Social Security

regulation stating that an "impairment(s) is medically equivalent to a listed

impairment in appendix 1 if it is at least equal in severity and duration to the

criteria of any listed impairment," 20 C.F.R. § 404.1526(a); Doc. 11, at 4,

Plaintiff fails to support his claims. As a case in point, while the regulation sets

out the "three ways" in which medical equivalence can be found, 20 C.F.R. §

404.1526(b), Plaintiff leaves it to the court to speculate as to which of the three

he would argue applies.  Doc. 11, at 4-8.

### (ii)    Commissioner's response.

The Commissioner maintains Plaintiff has failed to satisfy his burden of proving his digestive disorder equals Listing 5.08 because he has not shown his impairment equaled each of the criteria of Listing 5.08 during the relevant period.  Doc. 12, at 4.  In support of her argument, the Commissioner relies on *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("An impairment that manifests only some of these criteria, no matter how severely, does not qualify.").  *Id.*  She points to Plaintiff's admission "that he did not meet Listing 5.08 because his BMI did not fall below 17.50 on at least two occasions 60 days apart during a consecutive 6 months in a relevant period."  *Id.* at 5.

The Commissioner acknowledges Plaintiff "can establish medical equivalence if he has an impairment that is described in appendix 1 but he does not exhibit one or more of the findings specified in the particular listing," 20 C.F.R. § 1526(b)(1)(i)(A), thus theorizing that Plaintiff may be relying on the first of the three ways of finding medical equivalence.  Doc. 12, at 4.  She notes Plaintiff is attempting to establish equivalence based on his constant pain, nausea, vomiting, steady weight loss, and numerous visits to doctors and emergency rooms but, citing *Sullivan*, 493 U.S. at 531, argues that the functional impact of Plaintiff's digestive disorder cannot serve to establish

equivalence. *Id.* at 4.

### (iii) Plaintiff's reply.

Plaintiff did not exercise his option, Doc. 10, to file a reply brief directing the court to perceived flaws – whether factual or legal – in the Commissioner's response.

### d. The ALJ committed harmless error.

"The claimant bears the burden of establishing a prima facie case of disability at steps one through four." *Wells v. Colvin*, 727 F.3d 1061, 1064 n.1 (10th Cir. 2013). Thus, to establish medical equivalence at step three, a claimant must demonstrate that his impairment "is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a).

Medical equivalence can be found in three ways, *id.* § 404.1526(b), and the first sub-part of the first of these three ways, § 404.1526(b)(1)(i)(A), (b)(1)(ii), is considered here.[7] Under that method, if a claimant has "an impairment that is described in appendix 1, but . . . do[es] not exhibit one or more of the findings

---

[7] As reported, Plaintiff's only cited authority was to the medical equivalence regulation's definition of medical equivalence. *See* Doc. 11, at 4-8. Plaintiff makes no mention of how medical equivalence is determined – that is, the three ways in which it can be found, 20 C.F.R. § 404.1526(b). And, Plaintiff voiced no objection by reply brief to the Commissioner's (reasonable) suggestion that § 404.1526(b)(1)(i)(A) is implicated, Doc. 12, at 4, and, consequently, has foregone the opportunity to suggest otherwise.

specified in the particular listing, [an ALJ] will find that [the claimant's] impairment is medically equivalent to that listing if [the claimant] ha[s] other findings related to [the claimant's] impairment that are at least of equal medical significance to the required criteria." *Id.* § 404.1526(b)(1)(i)(a), (b)(1)(ii).

When making findings about medical equivalence under that provision, an ALJ considers all relevant evidence in the case record about the impairment and its effects on the claimant. *Id.* § 404.1526(c). "In considering whether a [claimant's] symptoms, signs, and laboratory findings are medically equal to the symptoms, signs, and laboratory findings of a listed impairment, [the ALJ] will look to see whether [a claimant's] symptoms, signs, and laboratory findings are at least equal in severity to the listed criteria." *Id.* § 404.1529(d)(3);[8] *see id.* § 404.1526(b)(2). Nonetheless, the ALJ "will not substitute [a claimant's] allegations of pain or other symptoms for a missing or deficient sign or laboratory finding to raise the severity of [a claimant's] impairment[s] to that of a listed impairment." *Id.* § 404.1529(d)(3).

During the hearing, Plaintiff's counsel acknowledged that Plaintiff did not meet Listing 5.08 ("[Plaintiff] comes within a hair of meeting the listing . . . ."). AR 35. Instead, Plaintiff's counsel contended that because Plaintiff "won't meet

---

[8]     "Section 404.1529(d)(3) explains how we consider your symptoms, such as pain, when we make findings about medical equivalence."   20 C.F.R. § 404.1526(b)(4).

the listing, . . . it would be my contention that [Plaintiff's status] would be the equivalent of the listing in that it has had the same effect on his ability to function." *Id.* In his brief on judicial review, Plaintiff isolates "no findings related to [his] impairment that are at least of equal medical significance to the required criteria." 20 C.F.R. § 404.1526(b)(1)(ii). Instead, focusing on his weight loss, he reurges the same BMIs that admittedly do not meet the listing. He does not – and cannot – give the court any supported explanation, however, of how BMIs that do not meet the required criteria can be of equal medical significance to that same required criteria. Plaintiff's only other focus targets his reports of constant pain and nausea but, once again, he fails to explain how his symptoms of pain and nausea are of equal *medical* significance to the exacting, required criteria. And, by regulation, his allegations of pain and other symptoms cannot supply the missing signs. *Id.* § 404.1529(d)(3).

The ALJ's decision reflects his consideration of Plaintiff's subjective complaints and of the medical evidence establishing Plaintiff's digestive issues, weight loss, and treatment for pancreas divisum. AR 20-23, 233, 240, 269, 360, 379, 380, 383, 386, 387, 400. Plaintiff does not challenge the ALJ's detailed summary of the medical evidence and of the impact of the digestive disorder. *Id.* at 19-23. Neither does he challenge the ALJ's residual functional capacity assessment.

In *Fischer-Ross*, the court examined the claimant's contention that he satisfied a listing and concluded that

> the ALJ's confirmed findings at step four and five of his analysis, coupled with indisputable aspects of the medical record, conclusively preclude [Plaintiff's] qualification under the listings at step three. No reasonable factfinder could conclude otherwise. Thus, any deficiency in the ALJ's articulation of his reasoning to support his step three determination is harmless.

431 F.3d at 735. The same applies here: the ALJ's evaluation of the medical record and of Plaintiff's functional complaints and limitations at step four, along with the resulting findings – all unchallenged by Plaintiff – preclude any favorable determination at step three that Plaintiff has findings related to his digestive disorder that are of equal medical significance to the required criteria of Listing 5.08. "[H]armless error analysis . . . may be appropriate to supply a missing dispositive finding . . . where, based on material the ALJ did at least consider (just not properly), [the Court] could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Id.* at 733-34 (internal quotation marks and citation omitted); *Cannady v. Astrue*, No. CIV-11-1650-HE, 2012 WL 7149377, at *5-6, (W.D. Okla. Dec. 21, 2012) (unpublished report and recommendation), *adopted by* 2013 WL 593392 (W.D. Okla. Feb. 14, 2013) (unpublished order).

### 3. Opinion evidence on medical equivalence.

#### a. Plaintiff's contentions.

Plaintiff contends that "[n]o medical evidence existed addressing the issue of medical equivalence to Listing 5.08, or the unusual nature of Plaintiff's illness."[9]  Doc. 11, at 8.  He claims that at the administrative hearing his attorney "advised the ALJ that there were outstanding medical records concerning Plaintiff's digestive problems" and argued that Listing 5.08 was equaled, putting "the ALJ . . . on notice that the issue of medical equivalence was before him [and] it was unreasonable for the ALJ to forego consultation of a medical expert."  *Id.* at 9.  According to Plaintiff, "[t]he ALJ easily could have obtained an opinion from a medical expert either through testimony or pre or post-hearing consultative examination but he did not," and thus erred in failing to fully develop the record.  *Id.*  His assertions fail.

#### b. The requisite medical opinion evidence.

"[L]ongstanding policy requires that the judgment of a physician . . . designated by the Commissioner on the issue of equivalence before the [ALJ] or the Appeals Council must be received into the record as opinion evidence and given appropriate weight."  Social Security Ruling (SSR) 96-6p, 1996 WL

---

[9]     Plaintiff cites to two provisions – 42 U.S.C. § 423(d)(5)(b) and 20 C.F.R. § 404.1512(d) – that pertain to medical records and a complete medical history but makes no claim of inadequacies in either regard.

374180, at *3 (July 2, 1996). That requirement is satisfied by certain documents bearing the signature of a State agency medical consultant. *Id.* Nonetheless, "an administrative law judge and the Appeals Council must obtain an updated medical opinion from a medical expert" under two circumstances:

> [1.] When no additional medical evidence is received, but in the opinion of the administrative law judge or the Appeals Council the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or
> [2.] When additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.

*Id.* at *3-4 (internal footnote omitted).

Here, the ALJ's finding that Plaintiff's digestive disorder is not equivalent in severity to any listing is supported by the requisite opinion evidence from State agency physicians. AR 52, 53; *see* SSR 96-6p, 1996 WL 374180, at *3. And, while Plaintiff submitted additional evidence to the ALJ, AR 393-412, and to the Appeals Council, *id.* at 1, 4, he does not point to any specific evidence from those submissions and make supported arguments establishing that the ALJ or Appeals Council erred by failing to conclude that the additional evidence might "change the State agency medical . . . consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of

Impairment."  SSR 96-6p, 1996 WL 374180, at *4.

In order to attain judicial review of an issue implicated by a final decision of the Commissioner, it is not enough to simply raise that issue.  *See Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994) ( "[P]erfunctory complaints fail to frame and develop an issue sufficient for judicial review.").  This Court is unable to address contentions for which a claimant fails to develop the factual and legal bases for his arguments.  *See Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003) (declining to speculate on claimant's behalf when argument on an issue is "insufficiently developed").

### c.     Consultative examination.

Plaintiff also maintains the ALJ erred by failing to "obtain[] an opinion" on medical equivalency "through [a] pre or post-hearing consultative examination[.]" Doc. 11, at 9.  Once again, however, an opinion on medical equivalency comes from a "medical expert," SSR 96-6p, 1996 WL 374180, at *3, *4 n.2, as opposed to a medical source such as a consultative examiner.  *Id.* at *4 n.1; *see* 20 C.F.R. §§ 404.1512(b)(8), 404.1527(f)(2)(iii).  By regulatory definition, these experts are "nonexamining sources." 20 C.F.R. 1527(f).

### 4. The Appeals Council's consideration of Dr. Ong's medical source statement.

#### a. The medical source statement.

When Plaintiff sought review of the ALJ's decision by the Appeals Council, he submitted both medical evidence and the opinion evidence under review here – a Physical Medical Source Statement completed by Dr. Bryan Ong on November 18, 2011, some five months after the ALJ's decision. AR at 469-71. According to Dr. Ong's residual functional capacity evaluation, Plaintiff's pain limited his ability (1) to sit longer than seven hours at a time and in an eight-hour day, (2) to stand or walk longer than one hour at a time and in an eight-hour day, (3) to lift in excess of twenty pounds more than occasionally; and (4) to carry in excess of ten pounds more than occasionally. *Id.* at 469. Dr. Ong assessed no limitation in Plaintiff's ability to use his feet and hands for repetitive movement and found he was limited to only occasional bending, squatting, crawling, climbing, reaching, and stooping. *Id.* at 470. Dr. Ong also appeared to conclude – the lines on the form are difficult to follow – that Plaintiff could never engage in a work activity involving unprotected heights or exposure to dust, gases, or fumes, that he has a marked[10] restriction from activities exposing him to temperature and humidity changes, and a mild restriction from activities exposing him to moving machinery, vibrations, and "other." *Id.*

---

[10]    The degrees of restriction are not defined.

The statement completed by Dr. Ong then called on him to list the *objective* medical findings supporting his assessment of Plaintiff's residual functional capacity. *Id.* He wrote: "Pancreas divisum (w/following chronic pancreatitis, requiring w/sphincterotomy and biliary stent placement) is on narcotics for pain control." *Id.* Next, when asked to explain if there were *objective* findings to support Plaintiff's subjective allegations of pain, Dr. Ong stated: "Pancreas divisum. [No] overt imaging findings of classic chronic pancreatitis, though itself pancreas divisum can lead to severe pancreatic pain." *Id.* at 471. Finally, where he was provided with the opportunity to include other remarks, Dr. Ong concluded: "Largely patient limited by pain, now needs narcotic control. We are looking at other causes including non pancreatic or functional pain causes for narcotic need, which is still in-[illegible]." *Id.*

Additionally, Dr. Ong estimated Plaintiff would reasonably be expected to miss ten workdays a month "due to the combination of his . . . impairments and subjective complaints" and would need to lie down or recline for at least one hour in an eight-hour period "due to his . . . impairments and subjective complaints . . . ." *Id.*

### b. The parties' contentions.

### (i) Plaintiff's opening brief.

Plaintiff initially argues that "[t]he Appeals Council omits reference to the

additional evidence submitted as part of Exhibit 24F"[11] and, similarly, that "[i]t appears the Appeals Council did not consider Dr. Ong's assessment, though counsel submitted it."[12] Doc. 11, at 11. He maintains "it is unclear whether the Appeals Counsel intended to *reject* Dr. Ong's assessment on the grounds the evidence was not qualifying new evidence . . . or whether the Appeals Council did not consider the evidence based on an inadvertent oversight of the evidence." *Id.* According to Plaintiff, "[u]nder these circumstances a remand is proper."[13] *Id.*

---

[11]    Dr. Ong's three-page medical source statement constitutes the entirety of Exhibit No. 24F. AR 469-71.

[12]    Plaintiff asserts error only in connection with Dr. Ong's assessment and does not refer to or develop any argument with regard to the other evidence, AR 413-68, submitted to the Appeals Council. Doc. 11, at 9-12.

[13]    These contentions are fallacious. In its Notice of Appeals Council Action, the Appeals Council informed Plaintiff that "[i]n looking at your case, we considered the reasons you disagree with the [ALJ's] decision and the additional evidence listed on the enclosed order of Appeals Council." AR 1. The list of exhibits, in turn, includes Exhibit 24F, described as a "Physical Medical Source Statement from the Oklahoma University Medical Center, dated November 18, 2011." *Id.* at 4. The Appeals Council explained to Plaintiff that it had "found that this information does not provide a basis for changing the [ALJ's] decision." *Id.* at 2. Thus, the Appeals Council both referred to and documented its consideration of this specific evidence. There was no "inadvertent oversight of the evidence" and it was not "*reject*[ed] . . . on grounds the evidence was not qualifying new evidence . . . ." Doc. 11, at 11. Rather, the Appeals Council denied review after considering the evidence.

Plaintiff then abruptly changes tack,[14] and submits the Appeals Council "accept[ed] the new evidence consisting of the opinion of Dr. Ong" but erred by failing to explain why it "reject[ed] the doctor's opinions." *Id.* Plaintiff contends this error was compounded by the fact that the Commissioner generally ascribes more weight to medical opinions from a treating source and is required to give "controlling weight to a treating-physician's well-supported opinion, so long as it is not inconsistent with other substantial evidence in the record." *Id.* at 11-12.

### (ii)    Commissioner's response.

The Commissioner contends the Appeals Council's consideration of the additional evidence proffered by Plaintiff was consistent with controlling Tenth Circuit law, and, that taking the additional evidence into account, substantial evidence supports the ALJ's decision. Doc. 12, at 8-9. The Commissioner further points to Plaintiff's failure to establish that Dr. Ong is, in fact, a treating-physician, explaining that she was able to locate only a single July 15, 2011 treatment note, AR 439-44, in the record. Doc. 12, at 9. In addition, the Commissioner maintains Dr. Ong's opinions fail to meet the requirements for entitlement to controlling weight. *Id.* at 9-10.

---

[14]    Plaintiff prefaces his new argument with another erroneous statement: "The Appeals Council states that its decision is the final decision of the Commissioner of Social Security in this case. (TR. 1)." Doc. 11, at 11. In fact, the Appeals Council stated "that *the* [ALJ's] decision is the final decision of the Commission of Social Security in your case." AR 1 (emphasis added).

### c. The law.

The Appeals Council must consider additional evidence if it is new, material, and chronologically relevant. *Threet*, 353 F.3d at 1191; 20 C.F.R. § 404.970(b). As the Tenth Circuit has observed, "[w]hile an express analysis of the Appeals Council's determination would have been helpful for purposes of judicial review, [there is] nothing in the statutes or regulations that would require such an analysis where the new evidence is submitted and the Appeals Council denies review." *Martinez v. Barnhart*, 444 F.3d 1201, 1207-08 (10th Cir. 2006). Importantly, if the Appeals Council explicitly states it considered new evidence, "there is no error, even if the order denying review includes no further discussion." *Martinez v. Astrue*, 389 F. App'x 866, 868-69 (10th Cir. 2010) (citing *Martinez v. Barnhart*, 444 F.3d at 1207-08). The same holds true if the Appeals Council is considering a medical source statement by a treating-physician. *Beardsley v. Colvin*, No. CIV-12-760-D, 2013 WL 3992253, at *2-4 (W.D. Okla. Aug. 2, 2013) (unpublished order).

### d. Application of the law.

In *Martinez v. Barnhart*, as here, the Appeals Council stated it had considered all of the evidence submitted by Plaintiff in the record and with his request for review. 444 F.3d at 1207-08; AR 1-2; s*ee also Hackett v. Barnhart*, 395 F.3d 1168, 1172-73 (10th Cir. 2005) (rejecting plaintiff's argument that

Appeals Council's treatment of new evidence was "perfunctory" and holding it would take the Appeals Council at its word in stating it had considered the additional evidence submitted). The court interprets such a statement as an "implicit determination" that the additional evidence qualifies as new and material evidence for consideration. *Martinez v. Barnhart*, 444 F.3d at 1207; *see also* 20 C.F.R. § 404.970(b). And, the Appeals Council evaluated the entire record – including this new evidence – in reaching its conclusion. *Martinez v. Barnhart*, 444 F.3d at 1207 ("[T]he Appeals Council adequately considered the additional evidence meaning that it evaluated the entire record including the new and material evidence submitted.") (quotations and citation omitted); 20 C.F.R. § 404.970(b). Under these circumstances, the Appeals Council satisfied its duty and did not err by failing to provide any specific analysis of Dr. Ong's medical assessment.

Because the Appeals Council considered the additional evidence, that evidence is now part of the administrative record. Accordingly, on judicial review, this Court must "consider the entire record, including [the new evidence] in conducting [its] review for substantial evidence *on the issues presented*." *Martinez v. Barnhart*, 444 F.3d at 1208 (alterations in original and internal citations omitted) (emphasis added). Here, those issues are whether the ALJ erred both as a matter of law and fact in finding that Plaintiff's impairment did

not equal Listing 5.08 and whether the ALJ should have ordered a medical expert or consultative examination to determine medical equivalence. Plaintiff, who has not challenged the ALJ's step four and five findings on judicial review, does not argue that – or how – Dr. Ong's opinions would in any manner impact those issues.[15]

## IV. Recommendation and notice of right to object.

For the reasons stated, the undersigned Magistrate Judge recommends the Commissioner's decision be affirmed.

The parties are advised of their right to object to this Report and Recommendation by the 15th day of December, 2013, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The parties are further advised that failure

---

[15] In any event, Dr. Ong's functional assessment is grounded solely on Plaintiff's subjective complaints of pain and his resulting need for narcotics. AR 469-71. The most recent – and only – evidence of any treatment by Dr. Ong was four months before he gave his opinions. *Id.* at 439-44. There is no indication on the assessment form that Dr. Ong performed a physical examination to measure Plaintiff's reactions to physical stimuli or to test limitations on movement. *Id.* at 469-71. Dr. Ong acknowledged there were no objective imaging findings of classic pancreatitis, noting only that pancreas divisum "can" lead to severe pancreatic pain. *Id.* at 471. Significantly, Dr. Ong stated that Plaintiff "now" has a need for narcotic control, a need that has had led to a search for "non pancreatic or functional pain causes." *Id.* In sum, because the only objective cause of Plaintiff's pain and resulting need for narcotic control – the sole reason Dr. Ong imposed restrictions – *might* be pancreas divisum, a search is now underway for a new cause apparently unrelated to Plaintiff's pancreas. Regardless of the status of Dr. Ong, who appears to have seen Plaintiff only once, his opinions regarding Plaintiff's limitations from any pancreas-related impairments are not well-supported by objective clinical findings. *See* 20 C.F.R. § 404.1527(d).

to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

SO ORDERED this 25th day of November, 2013.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE